IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEVIN P. O'NEILL,

                    Plaintiff,

   v.

UNITED STATES DEPARTMENT OF
JUSTICE EXECUTIVE OFFICE FOR
UNITED STATES ATTORNEYS
and BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES,

                    Defendants.

OPINION and ORDER

18-cv-396-jdp

---

Pro se plaintiff Kevin P. O'Neill was a member of the Outlaws Motorcycle Club. Along with other members of the Outlaws, O'Neill was convicted of racketeering. He is incarcerated in the federal prison in Oxford, Wisconsin.

O'Neill says that the agents investigating him and the other Outlaws used unusual tactics in the Outlaws case, and he has made multiple Freedom of Information Act (FOIA) requests to federal law enforcement agencies for information about those tactics. This lawsuit arises from two of O'Neill's unsuccessful FOIA requests. After screening his complaint as required by the Prison Litigation Reform Act, I granted O'Neill leave to proceed on FOIA claims against the two defendant law enforcement agencies. Dkt. 3.

The question in a FOIA case is not whether sought-after documents exist but whether the agency searched adequately for the requested information and disclosed what it found. Defendants move for summary judgment, contending that they diligently searched for the information O'Neill requested but found nothing. Dkt. 16. Defendants submit declarations describing systematic searches for the records requested by O'Neill and stating that they have

uncovered no responsive documents. O'Neill adduces no admissible evidence to dispute the adequacy or the results of defendants' searches, so I will grant defendants' motion and dismiss this case.

PRELIMINARY ISSUES

I begin with some of the problems with the evidentiary support for O'Neill's opposition to defendants' motion.

This court's procedures for summary judgment require litigants to put the material facts in a statement of proposed facts that includes citations to supporting evidence. *See* the attachment to Dkt. 13, at 2–8. O'Neill makes many factual assertions in his brief, but he has not submitted any statement of proposed facts. Nevertheless, because O'Neill is representing himself without counsel, I will consider factual assertions in O'Neill's brief, so long as those facts are supported with admissible evidence. But most of O'Neill's facts are not supported with admissible evidence.

To raise a genuine dispute of defendants' proposed findings of fact, O'Neill would have to cite admissible evidence to support of his version of the facts. But in response to defendants' facts, Dkt. 27, O'Neill frequently asserts that a proposed fact is disputed by asserting some additional facts, without citing any evidence that actually disputes the defendants' proposed fact. For example, in contesting defendants' proposed fact that O'Neill submitted a FOIA request to the Department of Justice, O'Neill says that he attached a "Service List" to his request showing that the request was also being submitted to other federal agencies. Dkt. 27, ¶ 3. Where O'Neill fails to cite admissible evidence to put defendants' fact into dispute, I will deem defendants' fact to be undisputed.

O'Neill sometimes attempts to dispute defendants' proposed facts by citing generally to his summary judgment brief. *See, e.g.*, Dkt. 27, ¶ 69 ("Disputed. *See* Pl.'s Brief in Opposition."). Such a response is deficient for two reasons. First, it is too vague: the court will not search the entire brief for the responsive point. Second, the brief itself, as an unsworn statement, is not admissible evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970). I will deem any proposed fact that O'Neill contests in this way to be undisputed.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

O'Neill was convicted of racketeering in the Eastern District of Wisconsin in 2000, and he is currently incarcerated at the Federal Correctional Institution at Oxford, Wisconsin. A task force of federal, state, and local officials investigated criminal acts of members of the Outlaws, including O'Neill. Dkt. 14, ¶ 6. The task force included Assistant United States Attorney Paul Kanter, ATF Special Agent Sandra DeValkenaere, and Milwaukee Police Department Detective Roger Hinterthuer. *Id.*, ¶ 7. O'Neill also describes another law enforcement group called the Midwest Cycle Intelligence Organization (MCIO) that included, among others, Kanter, DeValkenaere, and Hinterthuer. Dkt. 25, ¶ 5. O'Neill says this group investigated him and other members of the Outlaws in parallel to formal agency investigations. *Id.*, ¶¶ 5–6.

Hinterthuer published a memoir in 2015 recounting his role in the Outlaws investigation. Dkt. 14, ¶ 9. According to O'Neill (and not disputed by defendants) Hinterthuer's book described a scheme in which Hinterthuer, DeValkenaere, and Kanter fabricated and leaked false grand jury testimony from Hinterthuer in an attempt to spur O'Neill

3

or other Outlaws into trying to harm Hinterthuer or another witness. *Id.*, ¶¶ 9–20. O'Neill also says that during his 2000 criminal trial, FBI employees falsely told the United States Marshals Service that an associate of the Outlaws had arranged to have Kanter killed. *Id.* at ¶ 33–36. He says that the Marshals Service created a security plan for Kanter in response to this false threat that included traffic barricades, helicopter surveillance, rooftop snipers, and other security measures. *Id.*, ¶ 36. He says the security plan became public after a federal employee left a copy of the plan in a hotel lobby. *Id.*, ¶ 31.

This case involves two FOIA requests that O'Neill made regarding these alleged incidents.

## A. First FOIA request

O'Neill submitted a FOIA request to the United States Department of Justice Executive Office for United States Attorneys (EOUSA) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) on March 8, 2017. In this request, O'Neill asked these agencies to produce a copy of the fabricated grand jury transcript described in Hinterthuer's book.

Kanter and Assistant United States Attorney Carol Kraft, who were lead prosecutors on the Outlaws investigation and trial, have no knowledge of any fabricated grand jury transcripts being created or used in the Outlaws investigation. Dkt. 21, ¶ 4 and Dkt. 22, ¶ 3. Kanter never created a fabricated grand jury transcript in this or any other case. Dkt. 22, ¶ 3. Likewise, DeValkenaere, who was the lead ATF investigator on the Outlaws investigation, says that she has no knowledge of any fabricated grand jury transcripts being created or used in the investigation. Dkt. 24, ¶ 4.

O'Neill attempts to dispute these facts, relying on Hinterthuer's book and a private investigator's interview of Hinterthuer. *See* Dkt. 14-1, at 35–39, 51–54. But the book and the

4

interview are both hearsay and inadmissible, so O'Neill cannot raise a genuine dispute of fact with Hinterthuer's statements in them. Besides, in the interview Hinterthuer refuses to say whether his statements about the fake grand jury testimony are actually true. *Id.* at 53. Hinterthuer says that his facts were embellished to sell the book. *Id.* The court will deem defendant's evidence that there was no fake grand jury testimony to be undisputed.

1. **EOUSA's response to the first FOIA request**

EOUSA received O'Neill's first request on March 23, 2017. It sent O'Neill's request to the United States Attorney's Office for the Eastern District of Wisconsin with directions to search files in that district for responsive records. Charles Westphal, a paralegal in the district office, conducted the search. Dkt. 20. Westphal was familiar with the location and content of the records relating to the Outlaws investigation because he had responded to previous FOIA requests regarding the investigation.

Westphal began by reviewing the district's physical case file for the investigation, which consisted of 83 boxes of materials relating to all of the defendants in the Outlaws investigation and trials. He reviewed every folder in the file, paying close attention to any folders that appeared to relate to grand jury matters. Westphal then searched physical files pertaining to the Outlaws investigation that were in the possession of Kanter and Kraft. He found no fabricated grand jury transcripts and no grand jury transcripts of any kind with testimony from Hinterthuer.

Westphal then asked Kraft to search the district's electronic database of the Outlaws investigation, which contains all potentially discoverable material gathered during the investigation and trials. The database can be searched with keywords, and its files are classified into sections that can be browsed. Kraft searched this database on two occasions. Dkt. 21. Each

5

time, she performed a keyword search for "Roger Hinterthuer." Then she individually inspected the grand jury material and investigative report sections of the database, looking for references to Hinterthuer, fabricated grand jury testimony, or any leak or release of grand jury information. She found no responsive documents during either search.

After this search, EOUSA sent O'Neill a letter denying his FOIA request, although the denial letter was not fully informative. The letter informed O'Neill that EAUSA had searched its records and said that "to the extent that responsive records exist they are grand jury records" exempt from disclosure. Dkt. 19-4, at 2. O'Neill appealed the denial to the DOJ Office of Information Policy, which affirmed the denial "on partly modified grounds," stating that any responsive grand jury records would be protected from disclosure and that EOUSA was not required to conduct a search for the records O'Neill requested. Dkt. 19-8, at 2.

### 2. ATF's response to the first request

ATF's Disclosure Division received O'Neill's first request on June 21, 2017. O'Neill's request specifically mentioned an ATF investigation into O'Neill and other members of the Outlaws that had originated in the agency's St. Paul office. On August 31, 2018, more than a year after receiving O'Neill's request, the Disclosure Division asked the St. Paul office to search the records of that investigation for any fabricated grand jury transcripts.

DeValkenaere conducted a search of ATF files for responsive documents. Dkt. 24. She began by searching the physical case file, which was contained in multiple file drawers and boxes at ATF's Milwaukee office. She looked through all documents contained in the file drawers and boxes. She then searched ATF's electronic case file for the investigation, reviewing the documents contained in each document category in the electronic case file. She found no grand jury transcripts, real or fabricated.

ATF sent a letter to O'Neill on November 5, 2018, informing him that it had searched for the fabricated grand jury transcript he had requested but that it had not located any responsive records.

## B. Second FOIA request

O'Neill submitted a second FOIA request to EOUSA on July 12, 2017. In this request, O'Neill sought records relating to the purported threat to murder Kanter and the security plan created in response.

EOUSA received the request in August 2017 and sent it to the United States Attorney's Office for the Eastern District of Wisconsin with instructions to search for responsive records. Westphal contacted Kraft and Kanter about the request. Dkt. 20. Kraft told Westphal that the trial team on O'Neill's case never received any documents or records regarding a threat to any Assistant United States Attorney or any personal protection assignment during the case. Kanter said that he had no records regarding such a threat or a protection assignment and that any such records would likely be maintained by the Marshals Service, if they existed.

Westphal also asked First Assistant United States Attorney Rick Frohling about the procedures to be followed if an Assistant United States Attorney was threatened. *Id.* Frohling said that the Marshals Service would provide security if a threat was made and that the Marshals Service would not share its written protection plans with the United States Attorney's Office.

Westphal again searched the 83 boxes in the district's physical case file for responsive documents. He searched all folders in those boxes, looking for any that appeared to relate in any way to a threat against an Assistant United States Attorney or a security plan. He then

searched the files possessed by Kraft and Kanter pertaining to the Outlaws investigation. He found no responsive documents.

Westphal then asked Kraft to search the district's electronic database. She performed a keyword search for the terms "protection," "threats," "security," and "marshals." Dkt. 21, ¶ 7. She found no responsive records.

EOUSA sent a letter to O'Neill on November 7, 2017, informing him that it had found no responsive records in its Eastern District of Wisconsin office. O'Neill again appealed the decision to the DOJ's Office of Information Policy, which affirmed the EOUSA's decision.

## ANALYSIS

FOIA requires an agency to conduct an adequate search for responsive records. *Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 875 (7th Cir. 2018). In a lawsuit challenging the adequacy of a search, the responding agency is entitled to summary judgment if it can show that there is no genuine issue of material fact regarding the search's adequacy. *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). This requires the agency to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[T]he question at summary judgment is not whether the agency *might* have additional, unidentified responsive documents in its possession" but "whether the search itself was performed reasonably and in good faith." *Id.* (emphasis in original).

Defendants have presented evidence of good-faith searches in the form of declarations describing the searches they conducted. O'Neill makes several arguments for why there are

genuine issues of material fact regarding the adequacy of defendants' searches. For reasons explained below, none of O'Neill's arguments are persuasive.

**A. Arguments pertinent to both FOIA requests**

O'Neill contends that the declarations submitted by defendants should have stated that defendants searched all locations likely to contain relevant documents and should have stated whether any potentially responsive documents had been transferred to other storage locations. Dkt. 26, at 22–23. In reply, defendants submitted supplemental declarations providing that additional information. *See* Dkt. 30 and Dkt. 31. I would not allow defendants to make a brand-new argument in reply, but defendants' supplemental declarations are an appropriate response to one of O'Neill's arguments in opposition to the motion for summary judgment.

O'Neill contends that defendants' searches in response to both of his requests were inadequate because defendants should have searched records in the possession of the MCIO and its members. He says that the MCIO keeps records "at undisclosed locations," although he cites no evidence to support this assertion. Dkt. 26, at 19. He contends that defendants should have contacted MCIO members who are not defendants' employees, particularly Hinterthuer, to determine what records they possessed. But a FOIA request can only reach documents that are in the possession or control of the agency at the time the request is filed; FOIA does not obligate an agency to recover documents that are no longer in its possession or control. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

O'Neill says that records created by ATF and other law enforcement agents who were part of the MCIO should be considered in ATF's possession and control because these agents were "deputized and acting in concert with ATF" when they were participating in the MCIO. But O'Neill submits no admissible evidence in support of this factual proposition, and the cases

9

on which he relies do not support his legal argument. He cites *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1492 (D.C. Cir. 1984) for the proposition that documents created by an agency employee may be considered to be in the agency's possession and control, but that case involved records that had remained in the possession of agency employees, not records that were in the possession of a separate entity. And he cites *McGehee v. CIA*, 697 F.2d 1095, 1109 (D.C. Cir. 1983) for the proposition that two agencies cannot work together to shield documents from disclosure by simply transferring them from one agency to the other. But *McGehee* involved a FOIA request directed at the agency with current possession and control of the records, not the agency that had given up possession and control. FOIA requests to EOUSA and ATF cannot reach any documents in the possession and control of the MCIO at the time of the requests. Nor can requests to EOUSA and ATF reach documents in the possession and control of MCIO members who are not EOUSA and ATF employees, such as Hinterthuer, regardless of who initially created the documents.

### B. Arguments specific to O'Neill's first FOIA request

O'Neill challenges the adequacy of defendants' searches in response to his first request, which asked for copies of the supposed fabricated grand jury transcript, on two grounds: (1) Kanter and DeValkenaere's denials that any fabricated grand jury transcript was created or used in the Outlaws investigation are not credible; and (2) ATF should have searched records from other ATF investigations into the Outlaws as well as records that are not attached to a specific ATF investigation.

#### 1. Credibility of Kanter and DeValkenaere's denials

Kanter and DeValkenaere provide declaration testimony that they did not know of any fabricated grand jury transcript that was created or used in the Outlaws investigation. O'Neill

contends that these denials are not credible. Dkt. 26, at 3–10. O'Neill says that these denials are inconsistent with the record, but he cites nothing that actually contradicts Kanter and DeValkenaere. For example, he cites Judge Wood's memorandum decision dismissing a judicial misconduct complaint that O'Neill made against Judge Stadtmueller. Dkt. 14-1, at 44–46. Judge Wood said that the disclosure of fictitious grand jury testimony would not violate Federal Rule of Criminal Procedure 6(e)(2) because fictitious testimony would not constitute grand jury material. But Judge Wood did not determine that there really was any fictitious testimony, and nothing in Judge Wood's memorandum contradicts Kanter's and DeValkenaere's declaration testimony that they didn't know anything about any fictitious testimony.

O'Neill also contends that Kanter and DeValkenaere have a history of misconduct in O'Neill's criminal prosecution, which makes their testimony incredible. But this doesn't help O'Neill. In general, prior acts of misconduct are inadmissible under Federal Rule of Evidence 404(b)(1). Specific acts of dishonesty might be admissible during cross-examination under Federal Rule of Evidence 608. But O'Neill's brief doesn't identify any actual acts of dishonesty by either Kanter and DeValkenaere; he simply casts aspersions on their integrity based on fragments of information from the original criminal proceeding. O'Neill cannot forestall summary judgment simply by attacking the credibility of defendants' witnesses. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). O'Neill has to adduce admissible evidence to support his version of the facts, and he has not done so. O'Neill has no admissible evidence that the fictitious grand jury testimony ever existed.

2. **Other ATF record locations**

O'Neill contends that ATF's search was inadequate because it included only the case file of the ATF investigation into the Outlaws that originated in ATF's St. Paul office, ATF

Investigation No. 33431-94-0048-R. He contends that ATF should also have searched the case file for a separate ATF investigation described in a document that he attached to his first FOIA request, Dkt. 14-1, at 14–15. He also speculates that there may be responsive records that are not attached to a specific ATF investigation, contending that ATF's search should have sought such records.

The reasonableness of an agency's search is determined in light of the specific FOIA request, *Patterson v. IRS*, 56 F.3d 832, 841 (7th Cir. 1995), and O'Neill identifies nothing in his request that would reasonably have required ATF to search these other sources. ATF limited its search to the St. Paul investigation because O'Neill's request specifically directed ATF to that investigation. In a section of his letter titled "DESCRIPTION OF RECORDS SOUGHT FOR DISCLOSURE," O'Neill described the purported scheme between Hinterthuer, DeValkenaere, and Kanter. O'Neill offered this description "to assist [the agencies] in locating the records with a reasonable amount of effort," directing the agencies to the St. Paul investigation in a footnote to that description. Dkt. 19-2, at 3. And he attached a document to his request that appears to be a report from the St. Paul investigation that lists Hinterthuer and DeValkenaere as among the agents and officers involved in that investigation. Dkt. 14-1, at 9–11.

Nothing in O'Neill's first request suggests that the other ATF investigation he mentions would be likely to contain the fabricated grand jury transcript he sought. He cited the other ATF investigation in his request only to support his argument that he was entitled to expedited processing of his request because federal agents used unscrupulous methods known as "stirring the pot or tickling the wire" in investigating the Outlaws. *Id.* at 4–5. And the document

attached to his request describing the other ATF investigation does not mention Hinterthuer as involved in that investigation, unlike the document describing the St. Paul investigation.

O'Neill supports his speculation that responsive records may not be attached to a specific investigation only with a quote from *Canning v. U.S. Dep't of Justice*, 567 F. Supp. 2d 85 (D.D.C. 2008). Dkt. 26, at 4. In that case, DOJ submitted a document describing how ATF preserves investigatory material when it does not open a formal investigation. *Id.* at 89. The court described the document as "provid[ing] that in some instances, such as where an agent interviews a potential informant whose information is not useful, a 'general case' may be opened. Investigative files on general cases are 'maintained for filing investigative reports and related documents.'" *Id.* (quoting ATF Order 3100.6C, "Law Enforcement Management Information System (LEMIS)"). Defendants challenge the admissibility of this statement, but even if it were admissible, it would not support O'Neill's argument. *Canning* describes a process in which ATF creates a "general case" *instead* of opening a formal investigation. It does not describe a process in which ATF assigns material to a general case that is produced *during* a formal investigation.

## C. Arguments specific to O'Neill's second FOIA request

O'Neill challenges the adequacy of the search EOUSA conducted in response to his second request, which sought records relating to an alleged scheme to spread a false rumor that the Outlaws intended to have Kanter killed. In his declaration, Kanter denied that his personal files contained any records pertaining to a threat toward an Assistant United States Attorney. Dkt. 22, ¶ 4. O'Neill says this denial is not credible, citing a filing from another case in which O'Neill sued the FBI regarding an earlier FOIA request for information about this scheme, Reply Brief in Support of Defendants' Motion for Summary Judgment, *O'Neill v. U.S. Dep't of*

13

*Justice*, No. 16-CV-425, Dkt. 15 (E.D. Wis. Oct. 11, 2016). In that case, O'Neill had said that the FBI should have spoken with Kanter as part of its search for responsive records. *Id.* at 6. The defendants in that case responded, "Although [Kanter] undoubtedly had some knowledge of the alleged murder plot, [it] is highly unlikely he would know the current location of FBI files disclosing the basis for the allegation." *Id.*

I will assume, for the purposes of this opinion, that this statement from the previous case is admissible. But O'Neill doesn't explain how a statement that Kanter knew about the alleged murder plot would contradict Kanter's denial that he has any records regarding the plot. Indeed, defendants do not deny that there was a plot to murder Kanter or that the Marshals Service created a security plan to protect him. They deny only that they invented the plot and that they possess any documents responsive to O'Neill's request. *See* Dkt. 12, ¶ 2; Dkt. 21, ¶¶ 7–8; Dkt. 22, ¶ 4. O'Neill identifies no other grounds for challenging Kanter's denial and addresses no other arguments against the adequacy of EOUSA's search in response to his second request.

### D. Argument based on defendants' history of FOIA violations

O'Neill argues that defendants have demonstrated a policy or practice of ignoring FOIA's requirements, which should entitle him to injunctive relief applicable to future FOIA requests. This is not a separate claim on which I allowed O'Neill to proceed but an argument in opposition to defendants' motion for summary judgment.

The court of appeals for the Seventh Circuit does not appear to have discussed this type of FOIA claim, but both sides rely on *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770 (D.C. Cir. 2018). In that case, the court held that to state a policy or practice claim, a plaintiff "must allege a pattern of prolonged delay amounting to a persistent failure to adhere

14

to FOIA's requirements" and must allege that this pattern will interfere with his "right under FOIA to promptly obtain non-exempt records from the agency in the future." *Id.* at 780. The agency's conduct must show "a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Id.* at 778 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).

O'Neill says that defendants' policy or practice of FOIA violation is shown by four violations: (1) EOUSA's statement in its denial letter that grand jury transcripts are exempt from FOIA disclosure; (2) defendants' refusal to contact unspecified "agency personnel" who might identify the locations of the records O'Neill seeks; (3) defendants' failure to respond to his request for expedited processing of his first request; and (4) defendants' delays in responding to his requests, including ATF's lengthy delay in responding to his first request. Dkt. 26, at 27. Defendants make several arguments against O'Neill's policy or practice claim. I agree that O'Neill hasn't adduced evidence of a policy or practice of FOIA violation, so I need not address defendants' other arguments.

The conduct O'Neill describes does not meet *Judicial Watch*'s standard. The first two alleged FOIA violations show no agency wrongdoing. For the first, EOUSA was correct in stating that grand jury records are exempt from disclosure in response to a FOIA request, *see Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 230 (7th Cir. 1991), although fictitious grand jury transcript would not be exempt. The evidence in this case shows that no fictitious transcript was created in the Outlaws investigation and that EOUSA discovered no such transcript in its searches. The EOUSA did not withhold a fictitious transcript based on the exemption for grand jury material. Second, O'Neill identifies no agency personnel that defendants should have

contacted but did not. Indeed, EOUSA contacted Kanter and Kraft, and ATF contacted DeValkenaere.

Even if O'Neill's third and fourth examples are FOIA violations, they are not serious enough or common enough to support O'Neill's contention that defendants have a policy or practice of mishandling FOIA claims. O'Neill identifies only a single occasion on which each defendant failed to respond to his requests for expedited processing. And he identifies only one delay in defendants' responses to his requests, ATF's year-long delay in responding to his first request. Isolated mistakes by agency officials would be insufficient to state a policy or practice claim under the principles set out in *Judicial Watch*.

O'Neill says in his brief that there is "well-documented evidence" of defendants' delays and other "extensive" FOIA violations in processing his requests. Dkt. 26, at 27. But he cites no specific evidence in support of this contention. Instead, he points to a 28-page span of his declaration and a 176-page span of a document attached to that declaration without further explanation. The court will not scour the record for evidence to support a party's position. *See* Dkt. 13 (attachment with instructions for summary judgment motions). I conclude that O'Neill has not adduced evidence of any systematic effort on the part of defendants to delay disclosure or refuse to respond to FOIA requests.

ORDER

IT IS ORDERED that defendants United States Department of Justice Executive Office for United States Attorneys and Bureau of Alcohol, Tobacco, Firearms, and Explosives' motion

for summary judgment, Dkt. 16, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

    Entered February 25, 2020.

                                    BY THE COURT:

                                    /s/

                                    _____
                                    JAMES D. PETERSON
                                    District Judge